**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**---------------------------------------------------x**
**BUDDY DAVID, on behalf of himself and others similarly situated,**

**CASE NO. 26 CV 3320 (GHW)(GWG)**

**Plaintiff,**

**v.**

**ERMINIA RESTAURANT CORP., d/b/a LATTANZI CUCINA ITALIANA, and ALESSANDRO LATTANZI,**

**Defendants.**
**---------------------------------------------------x**

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE


JOSEPH & KIRSCHENBAUM LLP
D. Maimon Kirschenbaum
45 Broadway, Suite 320
New York, NY 10006
212-688-5640

LAW OFFICES OF JEFFREY E. GOLDMAN
Jeffrey E. Goldman
260 Madison Avenue, 15th Floor
New York, NY 10016
212-983-8999

*Attorneys for Plaintiff, proposed FLSA Collective and Sub-Collective Plaintiffs, and proposed Class and Sub-Class*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. STATEMENT OF FACTS ............................................................................................ 2

A. FLSA Late Payment Claims ........................................................................................ 2

B. FLSA Claims Brought On Behalf Of Tipped Employees Only ........................................ 4

i. Misappropriated tips ........................................................................................ 4

ii. Overtime rate claim........................................................................................ 4

C. Additional FLSA Claims In Proposed Amended Complaint.............................................. 5

III. ARGUMENT.......................................................................................................... 6

A. Legal Standard For Conditional Certification And Court-Authorized Notice..................... 6

B. Plaintiff Has Made The Modest Factual Showing Required For Conditional Certification ........................................................................................................ 8

C. The Underlying Merits Of The Case Are Immaterial To The Determination Of Conditional Certification And Notice ........................................................................ 10

D. The Proposed Notice Of Pendency Is Fair And Adequate ............................................. 11

E. Notice Should Be Sent To All Putative Collective Members Who Worked For Defendants On Or After April 22, 2023........................................................................................ 12

F. Discovery of Potential Opt-In Plaintiffs' Names and Contact Information is Proper and Necessary ........................................................................................................ 12

IV. CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484 (S.D.N.Y. 2009)............6

*Coley v. Vannguard Urban Improvement Ass'n*, No. 12 CV 5565,
2018 U.S. Dist. LEXIS 50787 (E.D.N.Y. Mar. 27, 2018)..................................2

*Cruz v. Hook-SupeRx, L.L.C.*, No. 09 CV 7717,
2010 U.S. Dist. LEXIS 81021 (S.D.N.Y. Aug. 5, 2010)....................................7

*Foster v. Food Emporium*, No. 99 CV 3860,
2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000).....................................7

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2d Cir. 2015) .............................8

*Hegazy v. Halal Guys, Inc.*, No. 22 Civ. 1880,
2022 U.S. Dist. LEXIS 159160 (S.D.N.Y. Sept. 1, 2022)..................................9,12,13

*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)...............................................6,7

*Hossain v. Let's Eat, LLC*, No. 24 CV 4078,
2025 LX 156846 (S.D.N.Y. June 18, 2025) .......................................................9,10,12

*In re Deloitte & Touche, LLP Overtime Litig.*, No. 11 Civ. 2461,
2012 U.S. Dist. LEXIS 12641 (S.D.N.Y. Jan. 17, 2012)....................................13

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007)....................6

*Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468 (S.D.N.Y. 2024) .......................4

*Martin v. Sprint/United Mgmt. Co.*, No. 15 Civ. 5237,
2016 U.S. Dist. LEXIS 352 (S.D.N.Y. Jan. 4, 2016)..........................................12

*Martinenko v. 212 Steakhouse Inc.*, No. 22 CV 518,
2022 U.S. Dist. LEXIS 76078 (S.D.N.Y. Apr. 26, 2022)...................................12

*Martinez v. JVA Indus.*, No. 20 CV 7977,
2021 U.S. Dist. LEXIS 66761 (S.D.N.Y. Apr. 6, 2021).....................................10,12,13

*Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 CV 8629,
2013 U.S. Dist. LEXIS 132777 (S.D.N.Y. Sept. 16, 2013)................................7,10

*Munoz v. The Group US Mgmt. LLC*, 348 F.R.D. 192 (S.D.N.Y. 2025).........................8,11,12,13

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)........................................................7

*Onate v. AHRC Health Care, Inc.*, No. 20 Civ. 8292,
2023 U.S. Dist. LEXIS 22543 (S.D.N.Y. Feb. 9, 2023)....................................8

*Ramos v. DNC Food Serv. Corp.*, No. 19 CV 2967,
2020 U.S. Dist. LEXIS 96123 (S.D.N.Y. June 1, 2020)....................................9

*Raniere v. Citigroup, Inc.*, 533 F. App'x 11 (2d Cir. 2013) ..........................................13

*Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011) ................................13

*Recio v. D'Almonte Enter. Parking Garage, Inc.*,
680 F. Supp. 3d 448 (S.D.N.Y. 2023)................................................................*passim*

*Rogers v. City of Troy, N.Y.*, 148 F.3d 52 (2d Cir. 1998) ...............................................2

*Ruiz v. Truffa Pizzeria & Wine Room Corp.*, No. 20 CV 8645,
2021 U.S. Dist. LEXIS 28542 (S.D.N.Y. Feb. 15, 2021)..................................11,12

*Singh v. Anmol Food Mart, Inc.*, No. 22 CV 5475,
2024 U.S. Dist. LEXIS 14475 (E.D.N.Y. Jan. 26, 2024) ..................................11

*Shahriar v. Mianor Rest. Grp., LLC*, No. 26 CV 1589,
2026 LX 340236 (S.D.N.Y. July 28, 2026)........................................................10

*Soonja Son v. Hand Hosp.*, 768 F. Supp. 3d 526 (S.D.N.Y. 2025) ................................8,10,11,12

*Uddin v. O'Brien Rest. Holding Co.*, No. 16 CV 2098,
2016 U.S. Dist. LEXIS 205561 (S.D.N.Y. Nov. 21, 2016)................................10

*Vilella v. Pup Culture LLC*, No. 23 CV 2291,
2023 U.S. Dist. LEXIS 207911 (S.D.N.Y. Nov. 17, 2023)................................10

**Statutes, Rules, and Regulations**

12 NYCRR § 146-1.3 .........................................................................................5

12 NYCRR § 146-1.4 .........................................................................................5

29 C.F.R. § 531.60 ............................................................................................5

29 U.S.C. § 203 .................................................................................................2,4

29 U.S.C. § 206 .................................................................................................2

29 U.S.C. § 207 .......... 2,4

29 U.S.C. § 216 .......... 2,6,7

29 U.S.C. § 255 .......... 7,12

29 U.S.C. § 256 .......... 7

Fed. R. Civ. P. 23 .......... 7

## I. PRELIMINARY STATEMENT

Plaintiff Buddy David was employed as a server at Lattanzi restaurant in New York, New York. Plaintiff has asserted Fair Labor Standards Act ("FLSA") claims for late paid minimum wage and overtime compensation on behalf of himself and all non-managerial employees (including servers, runners, bussers, bartenders, cooks, and dishwashers) who were employed at Lattanzi. Plaintiff has also asserted FLSA overtime and tip-misappropriation claims on behalf of himself and all non-managerial tipped employees (including servers, runners, bussers, bartenders, cooks, and dishwashers) who were employed at Lattanzi.[1] By this motion, Plaintiff respectfully requests that the Court (1) conditionally certify an FLSA collective consisting of all non-managerial employees employed by Defendants at Lattanzi on or after April 22, 2023; (2) conditionally certify an FLSA sub-collective consisting of all non-managerial tipped employees employed by Defendants at Lattanzi on or after April 22, 2023;[2] (3) order Defendants to produce certain identifying information about potential Opt-In Plaintiffs to facilitate the dissemination of notice of this action; and (4) approve Plaintiff's proposed notices and plan of notice.[3] Early certification and notice are appropriate and necessary to preserve potential Opt-In Plaintiffs' rights, as the FLSA statute of limitations continues to run on their claims until they opt in to this action.

---

[1] Plaintiff has asserted additional claims under New York law that are not the subject of the instant motion.

[2] The employee Andres, whose managerial status the parties dispute, is expressly excluded from the collective and sub-collective definitions.

[3] With this motion, Plaintiff submits the September 10, 2026 declaration of Denise Schulman ("Schulman Decl.") and exhibits thereto ("Schulman Ex. [number]"), the September 3, 2026 declaration of Buddy David ("David Decl.") and exhibit thereto ("David Ex. 1"), the September 1, 2026 declaration of Galo Aroca ("Aroca Decl."), and the September 1, 2026 declaration of Ismael Quechol ("Quechol Decl.") and exhibit thereto ("Quechol Ex. 1").

## II. STATEMENT OF FACTS

Plaintiff Buddy David filed this putative collective and class action asserting claims under the FLSA and New York Labor Law on April 22, 2026. (Dkt. No. 1.) Plaintiff was employed by Defendants as a server at their Manhattan restaurant called Lattanzi from 2022 to 2026. (Compl. (Dkt. No. 1) ¶¶ 4, 7, 11; David Decl. ¶ 2.) Former Lattanzi bussers Galo Aroca and Ismael Quechol have already joined this action as Opt-In Plaintiffs. (Dkt. Nos. 8, 18; Aroca Decl. ¶ 2; Quechol Decl. ¶ 2.) Aroca worked at Lattanzi from July to October 2025, and Quechol worked at Lattanzi from March to May 2026. (Aroca Decl. ¶ 2; Quechol Decl. ¶ 2.) As is relevant to this motion, the Complaint alleges that Defendants violated the FLSA by failing to timely pay all non-managerial employees their federal minimum and overtime wages, including a tip-ineligible manager in Lattanzi's tip pool, and paying tipped employees the wrong overtime rate. (Compl. ¶¶ 13-14, 24-25, 27-28, 30-49.) Plaintiff has also sought leave to file an amended complaint that alleges that Defendants violated the FLSA by failing to pay employees for all hours worked and failing to timely pay tipped employees their credit card tips. (Schulman Ex. 5 ¶¶ 28, 30, 40, 42, 52, 57; Dkt. No. 34.)

### A. FLSA Late Payment Claims

The FLSA requires prompt payment of wages due under the statute, which are minimum wage and overtime compensation and tips. 29 U.S.C. §§ 203(m)(2)(b), 206, 207, 216(b); *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55-57 (2d Cir. 1998); *Coley v. Vannguard Urban Improvement Ass'n*, No. 12 CV 5565, 2018 U.S. Dist. LEXIS 50787, at *41-42 (E.D.N.Y. Mar. 27, 2018). Defendants repeatedly paid Plaintiffs and other non-exempt employees – including both tipped (*i.e.*, front of house) and non-tipped employees (*i.e.*, back of house) – late.

Lattanzi maintained a Monday to Sunday workweek, and employees were supposed to be paid the Friday after the end of the workweek. (David Decl. ¶¶ 5-6.) However, Defendants' own paystubs show they often failed to pay on that schedule. For example, some of the Named Plaintiff's paystubs reflect the following pay period end dates and paydays:

| **Bates number** | **Pay period end date** | **Check date** | **Number of days between end of pay period and check date** |
|---|---|---|---|
| DEF54 | Sunday, 4/30/23 | Tuesday, 5/16/23 | 16 |
| DEF136 | Sunday, 3/16/25 | Monday, 3/31/25 | 15 |
| DEF132 | Sunday, 4/13/25 | Friday, 4/25/25 | 12 |
| DEF130 | Sunday, 4/27/25 | Monday, 5/19/25 | 22 |
| DEF129 | Sunday, 5/4/25 | Tuesday, 5/27/25 | 23 |
| DEF128 | Sunday, 5/11/25 | Tuesday, 5/27/25 | 16 |
| DEF126 | Sunday, 5/25/25 | Wednesday, 6/4/25 | 10 |
| DEF110 | Sunday, 8/31/25 | Thursday, 9/25/25 | 25 |
| DEF109 | Sunday, 9/7/25 | Monday, 9/29/25 | 22 |
| DEF108 | Sunday, 9/21/25 | Friday, 10/10/25 | 19 |
| DEF154 | Sunday, 11/2/25 | Wednesday, 11/19/25 | 17 |
| DEF152 | Sunday, 11/16/25 | Friday, 12/5/25 | 19 |

(Schulman Ex. 1.) Text messages sent by Defendant Alessandro Lattanzi to all front of house staff discuss repeated instances of late payments, including, for instance, processing payroll for the week of August 19, 2024 on September 14, 2024 and processing payroll for the week of September 2, 2024 on September 24, 2024. (David Decl. ¶ 13; David Ex. 1.)

In fact, Plaintiffs sometimes went weeks without pay. (David Decl. ¶ 7; Aroca Decl. ¶ 6; Quechol Decl. ¶ 5; Schulman Ex. 1.) Plaintiffs have identified other tipped and non-tipped employees who said that they were also paid several weeks late at times. (David Decl. ¶ 8-12; Aroca Decl. ¶ 8; Quechol Decl. ¶ 7.) Defendants' manager Andres once told several employees that the reason for the late payment was that the owner did not have the money to pay them, further indicating that the late payment issue affected all employees. (Aroca Decl. ¶ 7.) Similarly, Defendant Lattanzi's own statements in a group text show that late payments were a restaurant-

wide issue. (David Ex. 1.) Every time Defendants paid employees late, the employees did not timely receive the federal minimum wage compensation they were due. In addition, many employees worked more than 40 hours per week, resulting in the late payment of overtime compensation as well. (David Decl. ¶¶ 14-17; Aroca Decl. ¶¶ 9-10; Quechol Decl. ¶ 13; Quechol Ex. 1 (paystubs showing 3.2 overtime hours year to date); Schulman Ex. 1 at DEF152.)

**B. FLSA Claims Brought On Behalf Of Tipped Employees Only**

**i. Misappropriated tips**

The Complaint alleges that Defendants included a tip-ineligible manager named Andres in Lattanzi's tip pool. (Compl. ¶¶ 27-28.) The FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips." 29 U.S.C. § 203(m)(2)(B). Defendants allocated tips to servers, runners, bussers, and bartenders through a tip pool. (David Decl. ¶¶ 20, 22; Aroca Decl. ¶¶ 13, 15; Quechol Decl. ¶¶ 8, 10.) Lattanzi's tip pool included an employee named Andres who hired, fired, and scheduled employees. (David Decl. ¶¶ 23-26; Aroca Decl. ¶¶ 16-19; Quechol Decl. ¶¶ 10-11.) These responsibilities disqualified Andres from receiving tips under the FLSA. *See*, *e.g.*, *Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468, 501-505 (S.D.N.Y. 2024). All employees included in the tip pool were affected by the improper distribution of tips to Andres.

**ii. Overtime rate claim**

The FLSA requires employers to pay employees one and a half times their regular rate for hours worked in excess of 40 per week. 29 U.S.C. § 207(a). Defendants paid their tipped employees pursuant to a tip credit. (Compl. ¶¶ 18, 64; Schulman Ex. 1; Quechol Ex. 1.) Plaintiff contends that Defendants were not entitled to a tip credit because they did not provide proper notice of the tip credit. (Compl. ¶¶ 18-19.) However, the propriety of the tip credit is moot on this motion

because even if Defendants were entitled to apply a tip credit, they paid tipped employees less than the required overtime rate. The overtime rate for employees paid pursuant to a tip credit is calculated by multiplying their regular rate (in this case, the full New York minimum wage) by one and a half, and then subtracting the tip credit. *See* 29 C.F.R. § 531.60; 12 NYCRR § 146-1.4. The applicable tip credit minimum wage, full New York minimum wage, tip credit, and tip credit overtime rates in 2024, 2025, and 2026 were:

| Year | Tip credit minimum wage | Full New York minimum wage | Tip credit | Tip credit overtime rate (full minimum wage * 1.5 – tip credit) |
|---|---|---|---|---|
| 2024 | $10.65 | $16 | $5.35 | $18.65 |
| 2025 | $11 | $16.50 | $5.50 | $19.25 |
| 2026 | $11.35 | $17 | $5.65 | $19.85 |

12 NYCRR §§ 146-1.3(b)(1), 146-1.4.

Defendants' pay records show that instead of paying the tip credit overtime rate, they paid tipped employees an overtime rate of one and a half times the tip credit rate paid, or $15.975 in 2024 and 2025[4] and $17.025 in 2026. (Schulman Ex. 1 at DEF60, 152; Quechol Ex. 1 (showing 2026 year to date overtime hours of 3.2 and year to date overtime compensation of $54.48, for a resulting overtime rate of $17.025 ($54.48 / 3.2)).)

### C. Additional FLSA Claims In Proposed Amended Complaint

The proposed amended complaint also alleges that Defendants did not pay employees at all for some hours worked, in violation of the FLSA. (Schulman Ex. 5 ¶¶ 40, 42, 52, 57.) Defendants' own time and pay records show that the Named Plaintiff worked 44.56 hours the week starting December 9, 2024 and 46.38 hours the week starting December 16, 2024, yet Defendants paid him for 40 hours in each of those weeks. (Schulman Ex. 2; Schulman Ex. 1 at DEF55-56.)

[4] The Named Plaintiff's paystubs show that Defendants continued to pay the 2024 tip credit minimum wage of $10.65 in 2025, even though the tip credit minimum wage was $11 in 2025. (Schulman Ex. 1 at DEF108-110, 126, 128-30, 132, 136, 152, 154.)

Plaintiffs have identified three other employees who told them that they were not paid for all hours worked as well. (David Decl. ¶ 19; Aroca Decl. ¶ 12.) In addition, Defendants did not pay the Named Plaintiff or Opt-In Plaintiff Quechol at all for some weeks, in violation of the FLSA's minimum wage requirement. (David Decl. ¶ 27; Quechol Decl. ¶ 6.)

Finally, the proposed amended complaint clarifies that the FLSA late payment claim includes the late payment of credit card tips, which were distributed via payroll. (Schulman Ex. 5 ¶¶ 28, 30, 68.) This is borne out not only by Plaintiffs' declarations (David Decl. ¶ 21; Aroca Decl. ¶ 14; Quechol Decl. ¶ 9), but also by Defendants' paystubs, which include a line item for "Tips charged." (Schulman Ex. 1; Quechol Ex. 1.)

## III. ARGUMENT

### A. Legal Standard For Conditional Certification And Court-Authorized Notice

The FLSA contemplates the maintenance of collective actions by similarly situated employees. 29 U.S.C. § 216(b). Such collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact" and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 489 (S.D.N.Y. 2009). The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments on claims arising from the same events and brought under the same laws. *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007) ("Collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources.").

"[D]istrict courts have discretion . . . to implement § 216(b) by facilitating notice to

potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (cleaned up); *see also Hoffman-La Roche*, 493 U.S. at 170-73 (ruling that timely notice is necessary to afford employees the opportunity to "make informed decisions about whether to participate" and assists the trial court in managing the joinder of potential collective members). "Employees must receive timely notice in order for the benefits of the [FLSA] collective action to accrue." *Cruz v. Hook-SupeRx, L.L.C.*, No. 09 CV 7717, 2010 U.S. Dist. LEXIS 81021, at *7 (S.D.N.Y. Aug. 5, 2010). Unlike absent class members in a Fed. R. Civ. P. 23 class action, potential collective members must affirmatively consent (or "opt in") to be covered by the suit. 29 U.S.C. § 216(b); *Recio v. D'Almonte Enter. Parking Garage, Inc.*, 680 F. Supp. 3d 448, 455 (S.D.N.Y. 2023) (Gorenstein, J.). Unless otherwise tolled, the statute of limitations continues to run on each employee's claim until he or she files a written consent form with the Court. 29 U.S.C. §§ 255, 256(b). Time is of the essence because putative collective members' claims are diminished or extinguished every day. *Foster v. Food Emporium*, No. 99 CV 3860, 2000 U.S. Dist. LEXIS 6053, at *5 n.1 (S.D.N.Y. Apr. 26, 2000). Timely distribution of a notice of pendency alerting potential collective members of their right to opt-in an FLSA collective action is thus crucial.

"The Second Circuit has approved as 'sensible' a two-step method to certify FLSA collective actions. The first step — the current stage of this litigation — requires the district court to determine whether 'similarly situated' potential plaintiffs exist who should receive notice of the pending FLSA action and opportunity to join it as plaintiffs." *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 CV 8629, 2013 U.S. Dist. LEXIS 132777, at *8 (S.D.N.Y. Sept. 16, 2013) (citing *Myers*, 624 F.3d at 555); *see also Recio*, 680 F. Supp. 3d at 455. Following the opt-in period and the completion of discovery, "courts conduct a more stringent second tier analysis upon a full record

to decide whether the additional plaintiffs are similarly situated to the original plaintiffs." *Recio*, 680 F. Supp. at 456 (cleaned up).

At the first stage, a plaintiff need only make a "'modest factual showing that [the plaintiff] and others together were victims of a common policy or plan that violated the law.'" *Id.* at 455 (quoting *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2015)). "A showing that plaintiffs themselves were subjected to certain wage and hour practices . . . and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed collective" satisfies the plaintiffs' burden. *Munoz v. The Group US Mgmt. LLC*, 348 F.R.D. 192, 201 (S.D.N.Y. 2025) (cleaned up). Documents properly considered in this inquiry include plaintiffs' "own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Soonja Son v. Hand Hosp.*, 768 F. Supp. 3d 526, 539 (S.D.N.Y. 2025) (cleaned up). "This is a low standard of proof, and if the Court determines that similarly situated employees exist, it will conditionally certify the collective and order that appropriate notice be given to members of the FLSA collective[.]" *Onate v. AHRC Health Care, Inc.*, No. 20 Civ. 8292, 2023 U.S. Dist. LEXIS 22543, at *7 (S.D.N.Y. Feb. 9, 2023) (cleaned up).

### B. Plaintiff Has Made The Modest Factual Showing Required For Conditional Certification

Plaintiff has made the "modest factual showing" of similarly situated potential plaintiffs through the allegations in the complaint, his and the Opt-In Plaintiffs' sworn declarations, and the exhibits submitted. This evidence establishes that Plaintiff and putative collective members (*i.e.*, all non-managerial employees at Lattanzi) were similarly situated in that they were all subject to Defendants' common policy and practice of failing to timely pay minimum wage and overtime compensation. Plaintiff and the Opt-In Plaintiffs have all attested to being paid late and have identified other employees in both tipped and non-tipped positions who stated that they went weeks

without being paid. (David Decl. ¶¶ 6-12; Aroca Decl. ¶¶ 6-8; Quechol Decl. ¶¶ 4-7.) Plaintiffs' paystubs reflect irregular paydays, often with substantial gaps between the end of the pay period and the payday. *See supra* at 3. Defendants' manager stated that the reason for the late payments was a lack of funds, which indicates a restaurant-wide problem, and Defendant Lattanzi's own text messages show repeated instances of late payments. (Aroca Decl. ¶ 7; David Ex. 1.) This is more than sufficient to satisfy the modest evidentiary burden needed to conditionally certify a collective of all non-managerial employees as to the late payment claims. *E.g.*, *Hossain v. Let's Eat, LLC*, No. 24 CV 4078, 2025 LX 156846, at *16 (S.D.N.Y. June 18, 2025) (certifying collective of tipped and non-tipped employees where plaintiffs identified people in various positions who said they were not paid properly for overtime); *Ramos v. DNC Food Serv. Corp.*, No. 19 CV 2967, 2020 U.S. Dist. LEXIS 96123, at *13-16 (S.D.N.Y. June 1, 2020) (same); *see also Recio*, 680 F. Supp. 3d at 456 (certifying collective based on three declarations and noting that "[c]ourts routinely find comparable showings sufficient at this stage"). The Named Plaintiff and Opt-In Plaintiff Quechol have also attested that they were not paid for all of their hours worked, and the time and pay records produced by Defendants show at least two occasions where the Named Plaintiff worked more than 40 hours in a week but was paid for just 40 hours. (David Decl. ¶¶ 18, 27; Quechol Decl. ¶ 6; Schulman Ex. 2; Schulman Ex. 1 at DEF55-56.) Plaintiffs have also identified other employees who said they were not paid for all hours worked. (David Decl. ¶ 19; Aroca Decl. ¶ 12.) This satisfies the conditional certification standard. *See Hegazy v. Halal Guys, Inc.*, No. 22 Civ. 1880, 2022 U.S. Dist. LEXIS 159160, at *8 (S.D.N.Y. Sept. 1, 2022).

The evidence submitted also warrants certification of a sub-collective of Lattanzi's tipped employees for the tip-related and overtime rate claims. For the same reason that certification of the late minimum wage and overtime compensation is warranted, certification of the late payment

of tips as to the tipped employees is also appropriate. The tip misappropriation claim based on Andres' participation in the tip pool is perfectly suited for collective treatment. "[B]ecause any distribution from the pool affects all participants, the members of the collective must have been subject to a common policy or practice if any tips were improperly distributed from the pool." *Uddin v. O'Brien Rest. Holding Co.*, No. 16 CV 2098, 2016 U.S. Dist. LEXIS 205561, at *8-9 (S.D.N.Y. Nov. 21, 2016); *see also*, *e.g.*, *Shahriar v. Mianor Rest. Grp., LLC*, No. 26 CV 1589, 2026 LX 340236, at *6-7 (S.D.N.Y. July 28, 2026). Finally, Defendants' own paystubs show that they paid tipped employees an overtime rate of one and a half times the tip credit minimum wage, which is an underpayment even if Defendants were entitled to a tip credit. "Since these documents evince a payroll violation, it stands to reason that other employees were similarly situated." *Vilella v. Pup Culture LLC*, No. 23 CV 2291, 2023 U.S. Dist. LEXIS 207911, at *15 (S.D.N.Y. Nov. 17, 2023); *see also Hossain*, 2025 LX 156846, at *17.

Accordingly, the collective and sub-collective should be certified.

### C. The Underlying Merits Of The Case Are Immaterial To The Determination Of Conditional Certification And Notice

Although Plaintiff has made a robust showing that Defendants failed to timely pay required minim wage, overtime compensation, and tips; included a tip-ineligible employee in the tip pool; and did not pay tipped employees the correct overtime rate, an in-depth analysis of the underlying merits is unnecessary and inappropriate at this time. At this early stage, the court does not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Soonja Son*, 768 F. Supp. 3d at 540 (cleaned up); *see also*, *e.g.*, *Martinez v. JVA Indus.*, No. 20 CV 7977, 2021 U.S. Dist. LEXIS 66761, at *10 (S.D.N.Y. Apr. 6, 2021); *Mendoza*, 2013 U.S. Dist. LEXIS 132777, at *9. "[T]he focus of the inquiry is not on whether there has been an actual violation of the law but rather on whether the proposed plaintiffs are similarly situated .

. . with respect to their allegations that the law has been violated." *Recio*, 680 F. Supp. 3d at 455.

Thus, any factual disputes or substantive legal arguments going to the merits that Defendants may raise should not be considered, much less resolved, at this early stage of the proceedings. *E.g.*, *Soonja Son*, 768 F. Supp. 3d at 540; *Recio*, 680 F. Supp. 3d at 456. Moreover, while there may be differences in the positions, schedules, number of hours worked, and pay received by the members of the collective, such differences would be immaterial. "It is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, . . . as long as they were all similarly situated with respect to being subject to the same policy . . . , and there exists a factual nexus among the plaintiffs." *Ruiz v. Truffa Pizzeria & Wine Room Corp.*, No. 20 CV 8645, 2021 U.S. Dist. LEXIS 28542, at *14 (S.D.N.Y. Feb. 15, 2021) (cleaned up).

**D. The Proposed Notice Of Pendency Is Fair And Adequate**

Attached as Exhibit 2 to the Schulman Declaration is Plaintiff's proposed Notice of Pendency and Consent to Join form (the "Notice") to be distributed by mail and email in English and Spanish. "The district court has discretion regarding the form and content of the notice. *Singh v. Anmol Food Mart, Inc.*, No. 22 CV 5475, 2024 U.S. Dist. LEXIS 14475, at *10 (E.D.N.Y. Jan. 26, 2024) (cleaned up). In general, FLSA notices should contain:

> (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.

*Munoz*, 348 F.R.D. at 207. Some courts also require an FLSA notice to "include a warning that opt-in plaintiffs may be required to provide information, appear for deposition, or testify in court." *Id*. The proposed Notice contains all this information and should be approved.

In addition, notice via text message is appropriate. *See*, *e.g.*, *Munoz*, 348 F.R.D. at 208; *Soonja Son*, 768 F. Supp. 3d at 544; *Hossein*, 2025 LX 156846, at *21-22; *Martinenko v. 212 Steakhouse Inc.*, No. 22 CV 518, 2022 U.S. Dist. LEXIS 76078, at *19 (S.D.N.Y. Apr. 26, 2022); *Hegazy*, 2022 U.S. Dist. LEXIS 159160, at *13. To this end, Plaintiff has prepared a special, condensed Text Notice to be sent via text message. *See Martin v. Sprint/United Mgmt. Co.*, No. 15 Civ. 5237, 2016 U.S. Dist. LEXIS 352, at *49 n.32, *58-59 (S.D.N.Y. Jan. 4, 2016) (authorizing distribution of a special text notice similar to that proposed by Plaintiff here). (Ex. 3 (Proposed Text Notice).) The proposed Text Notice will contain an internet address where the full Notice will be posted and available for review and/or download by Collective members.

### E. Notice Should Be Sent To All Putative Collective Members Who Worked For Defendants On Or After April 22, 2023

Plaintiffs respectfully request that the Court order the Notice and Text Notice to be sent to all putative Collective members who worked for Defendants on or after April 22, 2023, which is three years before the filing of the initial Complaint in this action. The FLSA's statute of limitations is 3 years for willful violations. 29 U.S.C. § 255(a). Where, as here, a plaintiff has alleged that FLSA violations were willful (*see* Compl. ¶ 11), courts authorize notice for a three-year period. *E.g.*, *Munoz*, 348 F.R.D. at 206-07; *Recio*, 680 F. Supp. 3d at 459; *Hegazy*, 2022 U.S. Dist. LEXIS 159160, at *11; *Martinez*, 2021 U.S. Dist. LEXIS 66761, at *14-15; *Ruiz*, 2021 U.S. Dist. LEXIS 28542, at *16-17. Accordingly, the FLSA's three-year statute of limitations is the appropriate notice period.

### F. Discovery of Potential Opt-In Plaintiffs' Names and Contact Information is Proper and Necessary

In order to provide potential opt-in plaintiffs with notice of the pendency of this lawsuit, Plaintiff requires discovery of the names, last known addresses, last known phone numbers, last

known e-mail addresses, dates of employment, and position(s) held for those individuals. "As has been noted by a number of courts in this circuit, courts often grant this kind of request in connection with conditional certification of an FLSA collective action." *Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294, 327 (S.D.N.Y. 2011), *rev'd on other grounds*, 533 F. App'x 11 (2d Cir. 2013); *see also*, *e.g.*, *Munoz*, 348 F.R.D. at 206-07; *Hegazy*, 2022 U.S. Dist. LEXIS 159160, at *13-14; *Martinez*, 2021 U.S. Dist. LEXIS 66761, at *15-16. Indeed, "[i]t is now commonplace in this Circuit to require the provision of personal contact information to class counsel for the purpose of notifying a class of a collective action and enabling class counsel to obtain relevant discovery." *In re Deloitte & Touche, LLP Overtime Litig.*, No. 11 Civ. 2461, 2012 U.S. Dist. LEXIS 12641, at *3-5 (S.D.N.Y. Jan. 17, 2012) (collecting cases). This information should be provided in Excel format. *See Munoz*, 348 F.R.D. at 207.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion in full.

Dated: New York, New York
September 10, 2026

By: /s/ Denise A. Schulman

D. Maimon Kirschenbaum
Denise A. Schulman
JOSEPH & KIRSCHENBAUM LLP
45 Broadway, Suite 320
New York, NY 10006
Tel: (212) 688-5640
Fax: (212) 981-9587

Jeffrey E. Goldman
LAW OFFICES OF JEFFREY E. GOLDMAN
260 Madison Avenue, 15th Floor
New York, NY 10016
Tel: 212-983-8999
Fax: 646-693-2289

*Attorneys for Named Plaintiff, proposed FLSA Collective and Sub-Collective Plaintiffs, and proposed Class and Sub-Class*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing memorandum of law complies with the word-count limitation stated in SDNY Local Rule 7.1(c). Excluding the case caption, tables, this certification, and counsel's signature block, but including all footnotes, this brief contains 4,215 words. I make this certification using the word count feature of Microsoft Word.

/s/ Denise A. Schulman
Denise A. Schulman